IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Susan Stawaisz, | ) | Civil Action No. 8:15-cv-04542-JMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION OF** |
| | ) | **THE MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1] Plaintiff, proceeding pro se, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

In April 2009, Plaintiff filed an application for DIB, alleging an onset of disability date of August 29, 2006. [R. 113–14.] The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 72–75, 78–81, 85–86.] On September 1, 2010, Plaintiff requested a hearing before an administrative law judge

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

("ALJ"), and on May 17, 2011, ALJ Alice Jordan conducted a de novo hearing on Plaintiff's claims. [R. 48–71].

The ALJ issued a decision on July 20, 2011, finding Plaintiff not disabled within the meaning of the Social Security Act ("the Act"). [R. 15–23.] Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined review. [R. 2–5]. Upon judicial review, by Order dated September 12, 2013, this Court determined that the ALJ's decision was not supported by substantial evidence and that the ALJ 's decision should be remanded for proper consideration of the opinion of Plaintiff's treating physician Dr. DeSilva. [R. 598–06 (Opinion and Order, *Stawaisz v. Colvin*, C/A No. 8:11-3519-JMC).] On November 1, 2013, the Appeals Council vacated the ALJ's final decision and remanded the matter for a new decision. [R. 632.]

On March 28, 2014, Plaintiff appeared before the ALJ for a subsequent hearing during which she chose to appear and testify without the assistance of counsel or other representation. [R. 521–80.] On November 19, 2014, the ALJ issued a new and thoroughly crafted decision finding Plaintiff had not been under a disability as defined by the Act at any time from August 29, 2006, the alleged onset date, through December 31, 2010, the date last insured. [R. 470–500.]

At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2010, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of August 29, 2006, through her date last insured of December 31, 2010. [R. 472, Findings 1 & 2]. At Step 2, the ALJ found Plaintiff

_____

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

had the following severe impairments: Sjögren's syndrome; cervical spondylosis; lumbar

spine degenerative disc disease; morbid obesity; chondromalacia of the knees; and

fibromyalgia.  [R. 473, Finding 3.]  The ALJ also determined that Plaintiff suffered from the

following non-severe impairments: obstructive sleep apnea (OSA); thyroid and pituitary

conditions; depression/anxiety; alleged eye diagnoses; alleged symptom of fatigue; alleged

symptom of concentration problems; alleged symptoms of neuropathy and edema/swelling

in hands and ankles; post DLI diagnosis of atrial fibrillation. [*Id.*]  At Step 3, the ALJ

determined Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1.  [R. 475–80, Finding 4].

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the

ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that, through the date last insured, the claimant had the
> residual functional capacity to perform sedentary work (lift,
> carry, push, or pull 10 pounds occasionally and less than 10
> pounds frequently; stand or walk 2 hours in an 8-hour workday;
> and sit 6 hours in an 8-hour workday), as defined in 20 CFR
> 404.1567(a) except with the following limitations: have the
> ability to change positions; never climb ladder/rope/scaffolds;
> frequently balance, occasionally perform all other posturals:
> climb ramp/stairs, stoop, kneel, crouch, and crawl; occasionally
> reach overhead with bilateral upper extremities; avoid
> concentrated exposure to hazards, cold, heat, and wetness. In
> the alternative for a second RFC, I add the following additional
> limitation: because of inability to stay focused and concentrate
> due to some physical issues, she could perform jobs with SVP
> of 4 or less.

[R. 480, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was

capable of performing her past relevant work as an accountant, payroll supervisor, tax

preparer manager, and controller; and that, based on the second alternative RFC, Plaintiff

was capable of performing her past relevant work as a tax preparer (non-managerial). [R. 498, Finding 6.]  The vocational expert also testified that, based on the second or alternative RFC, there was also work available to Plaintiff in the national economy, including the jobs of billing clerk, telephone quotation clerk, charging account clerk, and finisher. [R. 499.]  Thus, the ALJ concluded Plaintiff had not been under a disability as defined by the Act from the alleged onset date of August 29, 2006, through the date last insured of December 31, 2010.  [R. 500, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined review.  [R. 443–46.]  Plaintiff filed this pro se action for judicial review on November 10, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff seeks to have this Court reverse the decision of the Commissioner and to remand this matter for an award of benefits because the ALJ failed to apply the requirements of the "Listing" to the medical record when the evidence, as a whole, compels the conclusion that she met the listing requirements for Sjögren's syndrome. [Doc. 27 at 4.]  Plaintiff also contends that, in line with the ALJ's failure to properly consider the listing requirements for Sjögren's syndrome, the ALJ overlooked her symptoms of fatigue which are so severe that it is difficult for her to push through a day with non-work activities.  [*Id.* at 8–10.]  Lastly, Plaintiff argues that both Dr. Swanthri DeSilva and Dr. Thomas Austin have "certified" her disability [Doc. 29 at 2], and that, while she is not totally incapacitated by Sjögren's syndrome, she does not need to be incapacitated in order to meet the standards of disability [*id*. at 4–5].

4

The Commissioner, on the other hand, contends that, as the District Court found in its September 12, 2013, Opinion and Order, Plaintiff has failed to prove that she met the criteria of Listing 14.10 prior to the expiration of her insured status. [Doc. 28 at 10.] The Commissioner also contends the ALJ adequately considered Plaintiff's complaints of fatigue in determining that she was not disabled under the Act. [*Id.* at 11.] Consequently, the Commissioner requests that this Court affirm the ALJ's decision. [*Id.* at 14.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

5

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.

6

*See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand

was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

10

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

11

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D. *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E. *Other Work*

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for

15

making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.  Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

16

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Listing Analysis

Plaintiff expressly challenges the ALJ's consideration of her impairments under Listing 14.10 and contends that proper consideration would have resulted in a finding of disability. [*See* Doc. 27.] Plaintiff argues that there is substantial evidence in her file to show that she (A) has the serologic evidence of Sjögren's syndrome,(B) that she has radiographic evidence via a brain MRI showing "'periventricular white matter lesions suggestive of vasculitis,'" and that (C) she has multiple system involvement – systemic arthritis, moderate peripheral neuropathy and Raynaud's Phenomenon. [*Id*. at 5.] Plaintiff also contends that the most relevant limitation of her Sjögren's syndrome is the level of fatigue she experiences. [*Id*. at 9.] The Court, however, finds the ALJ's decision is supported by substantial evidence.

#### *ALJ's Listing Analysis*

In evaluating Plaintiff's impairment under Listing 14.10, the ALJ reasoned as follows:

> Here, the longitudinal record shows the following objective evidence regarding the claimant's Sjögren's syndrome. August 2006 labs show elevated (212 U/mL) Sjögren's Anti-SS-A, elevated Thyroglobulin, Gn (133.0 ng/mL), and low Insulin-Like Growth Factor I (82 ng/mL)(4F/26, 27, 25). August 2006 treatment notes show that the claimant indicated that her

energy was stable (2F/6). November 2006 notes show that the claimant admitted that she had "more energy than in 20 years" (2F/5). November 2006 ANA was positive; diagnoses included Sjogren's syndrome. Physical exam was normal (1F/19, 7).

March 2007 notes indicate that the claimant was "getting human growth hormones because she was deficient, thought to be related to her Sjögren's syndrome" 93F/18). March, June, September, December 2007, July 2008, and April 2009 physical exams were normal (1F/6, 5, 4, 3, 2, 1).

At a September 2009 State agency CE with Larry Korn, D.O., physical exam showed no related findings. Dr. Korn diagnosed: Sjögren's syndrome by stated medical history (7F). November 2011 and April 2012 rheumatology notes indicate that the claimant's progress was stable (34F /2, 1).

Looking specifically to the claimant's alleged concentration problems and fatigue, the objective evidence shows the following. In January 2007, Diana Pollack, M.D., noted, "she would like neuro-psych testing done because of her fear of dementia and feeling that her cognition is abnormal and less than it used to be. However, this may have many contributing factors including the sleep apnea as well as her drug use, namely the narcotics" (3 F /20). In September 2007, Dr. Pollack noted further, "We also discussed the subject of depression because there is quite a history in her family of depression, and she is concerned she may come down with this .... At this time, she does not seem to have any special problem with dementia." Dr. Pollack made no related diagnoses (3F/14). At a September 2009 State agency CE with Larry Korn, D.O., mental exam showed: her mood was normal; she communicated and comprehended well, and she had excellent cognitive function (7F). Finally, all mental exams were normal. In conclusion, based upon the above objective evidence, I find that listing 4.10[6] is not met.

[R. 475–76.]

---

[6]The actual Listing considered is Listing 14.10.

*Discussion*

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare the listing criteria with the evidence of the claimant's symptoms. *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"). "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (quoting *Cook*, 783 F.2d at 1172). While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, *id.* § 404.1527(e)(2).

Listing 14.00, Immune System Disorders–Adult, provides that Sjögren's syndrome, as described in 1400.D7, is an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough. Listing 14.00D7. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D7. Many other organ systems may be involved, including musculoskeletal (arthritis, myositis), respiratory (interstitial fibrosis),

21

gastrointestinal (dysmotility, dysphagia, involuntary weight loss), genitourinary (interstitial cystitis, renal tubular acidosis), skin (purpura, vasculitis), neurologic (central nervous system disorders, cranial and peripheral neuropathies), mental (cognitive dysfunction, poor memory), and neoplastic (lymphoma). *Id.* Severe fatigue and malaise are frequently reported. *Id.* Sjögren's syndrome may be associated with other autoimmune disorders (for example, rheumatoid arthritis or SLE); usually the clinical features of the associated disorder predominate.

In order to meet listing level severity for a finding of disability, a claimant must show the existence of Sjögren's syndrome, as described above in 14.00D7, with:

A.    Involvement of two or more organs/body systems, with:

    1.    One of the organs/body systems involved to at least a moderate level of severity; and

    2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

*OR*

B.    Repeated manifestations of Sjögren's Syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

    1.    Limitation of activities of daily living.

    2.    Limitation in maintaining social functioning.

    3.    Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.10.

Upon review, this Court notes that the ALJ sufficiently identified and explained the relevant listing of Sjögren's syndrome. And, as an initial matter, while Plaintiff disagrees

22

with the ALJ's evaluation of her impairments under Listing 14.10, Plaintiff failed to direct the Court to any evidence of record which the ALJ has failed to consider, and/or failed to explain his consideration of, in performing the listing analysis.  Furthermore, Plaintiff failed to direct the Court to record evidence showing that she met all of the elements of either subpart A or B of Listing 14.10.  For example, Plaintiff did not identify the organ or body system involved to at least a moderate level of severity; and she did not show marked limitations in activities of daily living, social functioning, or in concentration, persistence or pace.   The ALJ, upon considering the record evidence, determined that Plaintiff's limitations in activities of daily living, social functioning, and concentration persistence and pace were all mild.  [R. 473–74.] Plaintiff failed to challenge this finding.  Additionally, the ALJ determined that Plaintiff's physical examinations from June 2006 through April 2009 typically showed symmetric musculature, full range of motion, strength within normal limits, and normal physical exam results. [*See* R. 494.]

Plaintiff suggests that her case should be remanded for an award of benefits because the ALJ failed to properly consider her "severe fatigue" in determining that she met Listing 14.10, or in determining that she could engage in gainful employment.  However, the Court finds this argument unavailing for two reasons.  First, the existence of "severe fatigue" is only one factor in determining listing level severity under Listing 14.10 which, from a clear reading of its required findings, is dependent on the presence of an organ or body system involved to at least a moderate level of severity in conjunction with the severe fatigue.  The severe fatigue, in an of itself, is not determinative under Listing 14.10.  Second, a reading of the ALJ's decision presents a clearly reasoned explanation of his consideration of Plaintiff's complaints of fatigue, which he found were not entirely

credible, in determining Plaintiff's RFC.  The ALJ noted that, in January 2007, Dr. Diana Pollack stated that, even with complaints of fatigue, Plaintiff had excellent cognitive function. [R. 476.]   The ALJ also pointed out that August 2006 and November 2006 treatment notes indicated statements from Plaintiff indicating that her "energy was stable" and that she had "more energy than in 20 years."   [R. 487.]   Additionally, the ALJ considered Plaintiff's activities of daily living and found them to be inconsistent with her complaints of disabling symptoms and limitations.   [R. 473–74, 489, 493.] Therefore, substantial evidence supports that the ALJ sufficiently provided a full analysis to determine whether Plaintiff's impairments met the Sjögren's syndrome listing, and substantial evidence supports the determination that Plaintiff did not meet the listing.

**Treating Physician Opinions**

Plaintiff challenges the ALJ's findings in light of opinions by Dr. DeSilva and Dr. Austin which "certify [her] disability."  [Doc. 29 at 2.]  Again, the Court finds that the ALJ's decision is supported by substantial evidence.

### *ALJ's Weighing of Physician Opinions*

The ALJ reviewed the opinion evidence provided by Dr. DeSilva and gave "great weight to the limitation of 'occasionally lift/carry 20 pounds,' as it is greater than the corresponding RFC limitation I gave above, and controlling weight to the limitation of 'occasionally reach above shoulder level,' as I have given the same limitation. However, I give the remaining limitations little weight."  [R. 490.]  The ALJ also noted that, with respect to Dr. DeSilva's March 2008 functional limitations, which the ALJ gave little weight, Dr. DeSilva failed to "indicate the basis on which his opinion was based: whether it was the

24

claimant's report, measured capacity, or clinical experience." [*Id.*] Additionally, the ALJ explained that:

> Dr. DeSilva first saw the claimant in August 2006, for just 1 or 2 visits prior to giving the first opinion (I note that the second opinion is given only 4 months later, and is the same/similar opinion). Therefore, Dr. DeSilva did not have a longitudinal treatment relationship with the claimant when the first two opinions were given. The third opinion was given after 1.5 years of treatment on a regular basis every couple of months or so. Second, I note that the forms were completed for long term disability through the claimant's work and not for an SSA claim; therefore, the form[] used was not an adequate evaluation of the claimant's RFC pursuant to SSRs 98-6p and 00-4p. However, I do acknowledge that Dr. DeSilva is a rheumatologist, a specialist in his field.

[R. 491.]

Without restating it here, the Court notes that the ALJ discussed the medical opinions given by Dr. Desilva and other doctors. [*See* R. 490–98.] The ALJ explained why some of the opinions were not supported by medical evidence of record nor by other evidence in the record, such as Plaintiff's activities of daily living. [*Id.*] And, the ALJ explained the reasons that he gave Dr. Korn's opinion great weight. [*Id.*]

### *Discussion*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating

physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c). *Id.* Consequently, the opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Additionally, Social Security Ruling ("SSR") 96–2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not

26

> be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

Upon review, Dr. DeSilva's treatment notes show as follows:

* 9/06 and 1/08 submissions to UNUM Provident for a Claim for Income Protection Benefits, indicates Plaintiff is able to lift up to 20 pounds occasionally; has difficulty concentrating; and should not bend/stoop/ crouch. [R. 416, 430];

* 5/08 letter to UNUM indicates Plaintiff was last seen on 2/08; is unable to concentrate and has short term memory problems; is unable to sit for more than 30 minutes, and is unable to stand/walk for greater than 20-30 minutes due to pain; and was unable to return to work at that time. [R. 431–32];

* 5/08 UNUM Estimated Functional Abilities Form indicating Plaintiff can lift up to 10 pounds occasionally, bend, climb stairs, reach above shoulders and push/pull 10 pounds occasionally and never kneel or crawl; can grasp but not do fine manipulation, medium dexterity or power grip; can not use feet for repetitive movement to operate foot controls; can perform sedentary activity 2-3 hours a day and light activity less than 1 hours a day. [R. 433–34.]

A review of Dr. Austin's noted indicate the following:

* 8/04-4/09 review of systems shows generally normal musculoskeletal exam [R. 189–97, 199]

* 11/06–3/10 review of systems shows generally normal musculoskeletal exam [R. 333–45]

As such, these treatment notes do not present a certification of disability as suggested by Plaintiff. Furthermore, the Court finds the ALJ sufficiently explained his

weighing of the treating physician opinions in this decision.  Neither Dr. DeSilva nor Dr. Austin found Plaintiff permanently disabled, but merely unable to return to work for a specific period of time.  In any instance, such a determination is reserved to the Commissioner, and Plaintiff failed to point to any evidence of record which would support a reversal of this finding by the ALJ.

The mere fact that Plaintiff has been diagnosed with Sjögren's syndrome does not equate to a finding of disability.  *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations).  While the Plaintiff would have the Court adopt such a position, such is not supported by the law.  Consequently, the Court finds the ALJ's decision is supported by substantial evidence.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

**IT IS SO RECOMMENDED**.


January 26, 2017                    s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge

28